John Meyer, MT Bar No. 11206
P.O Box 412
Bozeman, MT 59771
(406) 546-0149 | Phone
John@cottonwoodlaw.org

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| JOHN MEYER, | |
| Plaintiff, | Case No. |
| vs. | |
| UNITEDHEALTHCARE INSURANCE COMPANY; BILLINGS CLINIC | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |
| Defendants. | |

# INTRODUCTION

1. In December 2015, Plaintiff John Meyer was involved in a life-threatening ski-wreck at Big Sky Resort and spent approximately two weeks at the Billings Clinic and another two weeks at Community Medical Center in Missoula ("Missoula Community").

2. Meyer spent nine days in a coma.

3. When he emerged from the coma, Meyer consistently complained about his arm to anyone that would listen.

4. Defendant Billings Clinic ignored Meyer's complaints and encouraged his father to bring him to Missoula Community to undergo mental and physical rehabilitation.

5. Meyer's father took the Billings Clinic's suggestion and brought Meyer to Missoula Community for in-patient treatment on December 24, 2015. Meyer spent Christmas 2015 through the first part of January 2016 as a patient in Missoula Community.

6. Meyer continued to complain about his arm until Missoula Community took an x-ray and discovered Meyer's arm was cracked in half.

7. 

8. Meyer's friends, family, and colleagues told the Billings Clinic something was wrong with his arm before he was taken to Missoula Community.

9. 

10. A plate was installed in Meyer's arm in an emergency surgery.

2

11. At the time of the wreck, Meyer had health insurance with Defendant UnitedHealthcare Insurance Company ("United") with an in-network deductible of $6,000.

12. The Billings Clinic was considered an in-network hospital by United.

13. Missoula Community was considered an in-network hospital by United.

14. The medical services provided by Missoula Community should have been treated as in-network because Billings Clinic owns Missoula Community.

15. Instead of charging Meyer in-network rates, medical providers at Missoula Community billed Meyer out-of-network rates.

16. Six members of a Montana medical malpractice panel found that the Billings Clinic committed medical malpractice by failing to find Meyer's broken before discharging him.

17. Crowley Fleck represented Billings Clinic before the medical malpractice panel.

18. Instead of filing a medical malpractice lawsuit against Billings Clinic, Meyer repeatedly asked Crowley Fleck to ask Billings Clinic to join him as a co-plaintiff in a procedural billing lawsuit against United.

19. Billings Clinic could have joined Meyer in seeking to reform the surprise billings practices challenged in this case.

20. Crowley Fleck would not answer whether it conveyed Meyer's request that Billings Clinic join him in litigation to reform surprise billing practices.

21. Billings Clinic knowingly participated in fraud by not telling Meyer that it owned Missoula Community, suggesting that Meyer go to Missoula Community for rehab, and then allowing several service providers that repaired Meyer's broken arm to bill at out of network rates.

22. Many of the out of network bills were not paid and were sent to collections.

23. Meyer's credit score has suffered and he still has significant medical debt because of the Billings Clinic's medical malpractice and the ERISA/RICO violations challenged here.

24. On February 1, 2017, Meyer requested that United send him the following information pursuant to 29 U.S.C. § 1132(c)(1)(B):

> • a complete copy of the above-referenced policy/plan document in effect for 2015;
>
> • a copy of any applicable Summary Plan descriptions (summary of benefits and coverage);
>
> • a copy of the declaration page and coverage for the plan and any endorsements in effect during this timeframe;

    • all communications/EOB's with all medical providers for 2015-2017;

    • a detailed ledger or summary of all services submitted to or paid by United Healthcare to providers that reflects the date of service, any payments made by United Healthcare to providers or any amounts applied to the insured's deductible, co-pays or out of pocket policy limit for 2015-2017.

25. Meyer filed a lawsuit against United in July 2017 alleging claims under ERISA (29 U.S.C. § 1132(c) and 29 C.F.R. § 2560.502) for failing to provide the information. *Meyer v. UnitedHealthCare*, 9:17-cv-00098-DLC.

26. The lawsuit was dismissed after United's attorney informed Meyer's attorney that the lawsuit arose under state law and not ERISA.

27. After dismissing the 2017 lawsuit, United sent some of the requested information to Meyer.

28. Meyer exhausted his administrative remedies by spending approximately 1.5 hours on a web conference call with the attorney for United reviewing spreadsheets that were given to him regarding the billing and discussing resolution of the issue.

29. The spreadsheets that were provided to Meyer indicate he owed Billings Clinic $2835.21 for "in-network" services in 2015.

30. Billings Clinic sent Meyer an "in-network" bill for more than $6,000 for services provided in 2015.

5

31. Meyer filed a second complaint against United in 2018 alleging claims processing violations under state law. *Meyer v. United HealthCare Co.*, 9:18-cv-00173-DLC.

32. On April 11, 2019, the federal district court held a pretrial conference at which time Meyer learned that Billings Clinic owns Missoula Community.

33. Billings Clinic and United both knew that Missoula Community was owned by Billings Clinic and all services provided at the hospital should have been billed at in-network rates.

34. The district court subsequently granted United's motion for judgment on the pleadings and held the state claims were pre-empted by ERISA.

35. The Ninth Circuit affirmed in March, 2021.

36. In September 2021, Meyer reached out to Crowley Fleck to discuss the ERISA claims alleged in this case against Billings Clinic.

37. Meyer received a letter back from Crowley Fleck that stated any ERISA claim against the Billings Clinic would be "frivolous" and threatened to seek costs and fees under Rule 11 if Meyer filed this lawsuit.

38. Billings Clinic and United engaged in conduct of an enterprise through a pattern of racketeering activity which caused injury to Meyer.

39. Billings Clinic had some degree of control over whether the

6

medical services provided and bills sent to Meyer were billed as in-network or out.

40. United had some degree of control over whether the medical services provided and bills sent to Meyer were billed as in-network or out.

41. Billings Clinic and United both deceived Meyer into thinking Missoula Community was an out of network provider.

42. Billings Clinic and United actively concealed the fact that Missoula Community is owned by Billings Clinic by allowing Meyer to be billed for medical service provided at Missoula Community as out of network.

43. Neither Billings Clinic nor United told Meyer why medical services provided at the in-network hospitals would be billed at out-of-network rates.

44. Neither Billings Clinic nor United told Meyer that he would be billed for medical services performed at an in-network facility at out-of-network rates.

45. Billings Clinic and United acted as an enterprise by engaging in a course of conduct that surprise billed Meyer with out of network rates for medical services that should have been billed at in-network rates.

46. Billings Clinic, as owner of Missoula Community, billed Meyer for medical services he did not owe.

47. United knowingly allowed Billings Clinic to bill Meyer for

medical bills he did not owe.

48.     Billings Clinic and United have a long-standing business relationship.

49.     Billings Clinic and medical providers at facilities it owns engaged in mail and wire fraud under 18 U.S.C. § 1961; 18 U.S.C. § 1341; and 18 U.S.C. §1343 by sending Meyer bills and calling him to collect on the following bills that he did not owe.

50.     The following is a small sampling of the fraudulent collections letters that were sent to Meyer for services that should have been covered as in-network:

- $710.00 Hahnstadt (April 8, 2016) (for 2015 & 2016 Services)
- $1,355.00 Missoula Community (April 18, 2016)
- $228.04 Missoula Bone & Joint (May 3, 2016)
- $840.00 Hahnstadt (May 6, 2016) (for 2015 & 2016 Services)
- $1,355.00 Missoula Community (May 16, 2016)
- $59.85 Missoula Community (May 26, 2016) (Final Notice)
- $3,068.00 Missoula Community (May 26, 2016) (Final Notice)
- $1,387.00 Missoula Community (June 3, 2016) (2015 Services)
- $268.68 CPG Physician Billing (June 6, 2016)
- $970.00 Hahnstadt (June 8, 2016) (2015 & 2016 Services)
- $60.08 Missoula Community (July 18, 2016) Collections Letter

- $3,083.96 Missoula Community (July 18, 2016) Collections Letter

- $1,277.06 Missoula Community (July 25, 2016) Collections Letter

- $89.33 Collections Letter (August 18, 2016)

- $970.00 Hahnstadt (Final Notice) (September 12, 2016)

- $149.00 Collections Letter (September 16, 2016)

- $232.88 Collections Letter (September 19, 2016)

- $1,390.42 Missoula Community (October 6, 2016) Collections Letter

- $234.64 Collections Letter (October 19, 2016)

- $890.51 Collections Letter (October 24, 2016)

- $149.00 Collections Letter (December 20, 2016)

- $7,532.78 Missoula Community (October 5, 2017) Collections Letter

51. Meyer paid some of the fraudulent bills that should not have been sent to him.

52. United facilitated the mail and wire fraud by allowing providers that performed services at facilities owned by Billings Clinic to repeatedly seek to collect on medical bills that he did not owe.

53. Billings Clinic extorted and conspired to extort money from Meyer that he did not owe by sending medical bills and calling to collect on bills that were not owed.

54. United facilitated the extortion and conspiracy to extort by

9

allowing Billings Clinic to repeatedly seek to collect on medical bills that he did not owe.

55. This series of conspiracies to extort and failed attempts to extort constitute a "pattern of racketeering activity" within meaning of Racketeer Influenced and Corrupt Organizations Act (RICO).

56. In addition to inflicting financial injury, Defendants actions caused Meyer to experience suicidal ideations.

## PARTIES, VENUE, AND JURISDICTION

57. John Meyer is a resident of Bozeman, Montana.

58. Defendant UnitedHealthcare Insurance Company is a corporation headquartered in Hartfort, CT. United is engaged in the business of insurance within the State of Montana.

59. Defendant Billings Clinic is Montana's largest health care system serving Montana, Wyoming, and the western Dakotas.

60. Plaintiff John Meyer is a proper party with standing to bring this action under the Employee Income Retirement Security Act and the Racketeering Influence Corrupt Organizations Act.

61. Jurisdiction and Venue are proper in this Court per 28 U.S.C. § 1331 and 29 U.SC. § 1132(e). The insurance policy at issue was provided to Plaintiff through his past employer, Wild Earth Guardians, and is thus

governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq.

62. Any exhaustion requirement was satisfied by Meyer's conversation with United's attorney to resolve the billing issues, is waived by the Defendants' fraudulent activities, would be futile because of the equitable requested relief, and because United failed to comply with statutory requirements under 29 U.S.C. § 1132.

## CLAIMS FOR RELIEF

### COUNT ONE – Civil Penalties for Defendant's Violation of 29 U.S.C. § 1132(c)(1)(B)

63. Plaintiff incorporates all proceeding paragraphs by reference.

64. On February 1, 2017, Meyer requested documents from United in his file that were necessary to understand which of his claims had been paid and which had not.

65. United did not respond to the request until August 28, 2017.

66. United's delay in sending the requested information violated 29 U.S.C. § 1132(c)(1)(B).

67. Meyer requests a civil fine against United of $110 a day be awarded to him pursuant to 29 C.F.R. § 2560.502(c)(1).

### COUNT TWO – Equitable Relief Under 29 U.S.C. § 1132(a)(1)-(3) or Federal Common Law

68. Plaintiff incorporates all proceeding paragraphs by reference.

11

69. Defendant United violated ERISA by:

A. Failing to maintain correct records regarding the amount of "in-network" claims that had been submitted for payment in 2015 and 2016.

B. Failing to pay service providers for all "in-network" services that were provided with the exception of the $6,000 owed per the policy.

C. Facilitating surprise billing by allowing services that were performed at Missoula Community to be billed as out-of-network.

70. Defendant United committed fraud by representing that Billings Clinic was an in-network provider while allowing medical services that were provided at a facility owned by Billings Clinic to be billed as out-of-network.

71. Meyer requests equitable remedies including, but not limited to, being made whole for benefits he should have received, fees and interest on any debts sent to collection that should have been paid and any other surcharge that is appropriate under the equities of this case.

## COUNT THREE – Equitable Relief Under 29 U.S.C. §1132(a)(3) or Federal Common Law

72. Plaintiff incorporates all proceeding paragraphs by reference.

73. Defendant United violated 29 U.S.C. § 1132(a)(3) by resetting Meyer's annual in-network and out-of-network deductibles on January 1, 2016, instead of twelve months after Meyer secured insurance through United.

74. United was unjustly enriched and avoided paying medical expenses that it should have paid by arbitrarily setting the annual deductible reset date.

## COUNT FOUR – Equitable Relief Under 29 U.S.C. § 1132(a)(3) or Federal Common Law

75. Plaintiff incorporates all proceeding paragraphs by reference.

76. Defendant Billings Clinic violated 29 U.S.C. § 1132(a)(3) by knowingly participating in Defendant United's breach of fiduciary duty.

77. While Meyer was in a coma, Meyer's father spoke to representatives for Billings Clinic and United about his health insurance.

78. The Billings Clinic knew that Meyer had health insurance through United before medical service providers began to bill him for medical services he was provided while at Billings Clinic and Missoula Community.

79. The Billings Clinic and the facilities it owns, including Missoula Community, communicated with United about the medical services that were provided to Meyer as the result of his ski wreck before he began to receive medical bills for the services.

80. The Billings Clinic knew that it was considered in-network for purposes of Meyer's health plan.

81. The Billings Clinic knew or should have known that emergency medical services that were provided to Meyer at facilities it owns, including Missoula Community, should have been billed as in-network.

82. The Billings Clinic knowingly participated in United's ERISA violations.

13

83. The Billings Clinic suggested that Meyer be taken to Missoula Community and then knowingly allowed its service providers to bill Meyer for services they provided as "out-of-network."

84. The Billings Clinic knowingly allowed United to violate ERISA by coding the emergency medical services that Meyer was provided for his broken arm as "out-of-network."

85. Medical services provided at Missoula Community should have been billed as in-network because Billings Clinic owns Missoula Community.

86. Defendant Billings violated 29 U.S.C. § 1132(a)(3) because it had actual or constructive knowledge of this ownership.

87. Defendants Billings Clinic violated 29 U.S.C. §1132(a)(3) by facilitating the practice of "surprise billing."

88. Meyer has suffered cognizable losses because of the surprise billing, such as unnecessary bills, harassment from creditors, and a poor credit score.

89. Meyer paid at least two of the fraudulent bills.

## COUNT FIVE – Violations of Racketeering Influenced and Corrupt Organizations Act 18 U.S.C. §§ 1961-1968

90. Defendants violated the Racketeering and Influenced and Corrupt Organizations Act by engaging in conduct of an enterprise through a pattern of racketeering activity that caused injury to Meyer.

91. Plaintiff incorporates all proceeding paragraphs by reference.

## REQUEST FOR RELIEF

Plaintiff respectfully prays for the following relief:

A. Declare that Defendants violated ERISA and RICO;

B. Order Defendants to reimburse Meyer for benefits he should have received, fees and interest on any debts sent to collection that should have been paid, and any other surcharge that is appropriate under the equities of this case.

C. Reform and rewrite the health insurance contract that Meyer had with United so that all medical services provided at a facility owned or otherwise managed by Billings Clinic are billed "in-network."

D. Reform and rewrite the health insurance contract so that the annual deductible reset once every twelve months, not after two months like United unfairly and unethically did in this case.

D. Grant any other requested or appropriate relief.

DATED this 10th day of December, 2021.

/s/John Meyer
JOHN MEYER
P.O. Box 412
Bozeman, MT 59771
(406) 546-0149
John@cottonwoodlaw.org

15