John Meyer, MT Bar No. 11206
P.O Box 412
Bozeman, MT 59771
(406) 546-0149 | Phone
John@cottonwoodlaw.org

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

|  |  |
|---|---|
| JOHN MEYER, | ) |
| | ) |
| Plaintiff, | ) Case No. 9:21-cv-148-DLC |
| vs. | ) |
| | ) AMENDED COMPLAINT FOR |
| UNITEDHEALTHCARE | ) DECLARATORY AND INJUNCTIVE |
| INSURANCE COMPANY; BILLINGS | ) RELIEF |
| CLINIC; BILLINGS CLINIC | ) |
| REGIONAL CARE, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |

## INTRODUCTION

1.  This case is about health insurance.

2.  "Surprise billing" is a commonly referred to phenomenon where a patient receives "out-of-network" bills for medical services that were provided at an "in-network" medical facility.

3.  The "No Surprises Act" went into effect in 2022 and would have prevented some of the surprise medical bills that Plaintiff John Meyer challenges in this case. 42 U.S.C. § 300gg-111(a)(1)(A); (a)(3)(C)(ii)(I)(bb).

4.  Defendants' actions, inactions, and conduct violated the Racketeer Influenced and Corrupt Organizations ("RICO") Act and the Employee Income Retirement Security Act ("ERISA").

5.  In December 2015, Plaintiff John Meyer was involved in a life-threatening ski-wreck at Big Sky Resort and spent approximately two weeks at the Billings Clinic and another two weeks at Community Medical Center in Missoula ("Missoula Community").

6.  Meyer spent nine days in a coma.

7.  When he emerged from the coma, Meyer consistently complained about his arm to anyone that would listen.

8.     Defendant Billings Clinic ignored Meyer's complaints and encouraged his father to bring him to Missoula Community to undergo mental and physical rehabilitation.

9.     Meyer's father took the Billings Clinic's suggestion and brought Meyer to Missoula Community for in-patient treatment on December 24, 2015. Meyer spent Christmas 2015 through the first part of January 2016 as a patient in Missoula Community.

10.     Meyer continued to complain about his arm until Missoula Community took an x-ray and discovered Meyer's arm was cracked in half.



11.

12.     Meyer's friends, family, and colleagues told the Billings Clinic something was wrong with his arm before he was taken to Missoula Community.



13.

14.     A plate was installed in Meyer's arm in an emergency surgery.

15.     At the time of the wreck, Meyer had health insurance with Defendant UnitedHealthcare Insurance Company ("United") with an in-network deductible of $6,000.

16.     The Billings Clinic was considered an in-network hospital by United.

17.     The medical services provided by Missoula Community should have been treated as in-network because Defendant BillingsClinic Regional Care and/or Billings Clinic owns Missoula Community.

18.     Instead of charging Meyer in-network rates, medical providers that provided services at Missoula Community billed Meyer out-of-network rates.

19.     Six members of a Montana medical malpractice panel found that the Billings Clinic committed medical malpractice by failing to find Meyer's broken arm before discharging him.

20.     Crowley Fleck represented Billings Clinic before the medical malpractice panel.

21.     Instead of filing a medical malpractice lawsuit against Billings Clinic, Meyer repeatedly asked Crowley Fleck to ask Billings Clinic to join him as a co-plaintiff in a surprise billing lawsuit against United.

22.     Billings Clinic could have joined Meyer in seeking to reform the surprise billings practices challenged in this case.

23.     Crowley Fleck would not answer whether it conveyed Meyer's request that Billings Clinic join him in litigation to reform surprise billing practices.

24.     Billings Clinic knowingly participated in fraud by not telling Meyer that it owns or was in a partnership that owns Missoula Community, suggesting that Meyer go to Missoula Community for rehab, and then allowing several service providers that repaired Meyer's broken arm to bill at out of network rates.

25.     Many of the out of network bills were not paid and were sent to collections.

26.     Meyer's credit score has suffered and he still has significant

medical debt because of the Billings Clinic's medical malpractice and the

ERISA and RICO violations challenged here.

27.     On February 1, 2017, Meyer requested that United send

him the following information pursuant to 29 U.S.C. § 1132(c)(1)(B):

> • a complete copy of the above-referenced policy/plan document
> in effect for 2015;
>
> • a copy of any applicable Summary Plan descriptions (summary
> of benefits and coverage);
>
> • a copy of the declaration page and coverage for the plan and
> any endorsements in effect during this timeframe;
>
> • all communications/EOB's with all medical providers for 2015-
> 2017;
>
> • a detailed ledger or summary of all services submitted to or
> paid by United Healthcare to providers that reflects the date of
> service, any payments made by United Healthcare to providers or
> any amounts applied to the insured's deductible, co-pays or out of
> pocket policy limit for 2015-2017.

28.     Meyer was represented by a firm and filed a lawsuit against United

in July 2017 alleging claims under ERISA (29 U.S.C. § 1132(c) and 29 C.F.R. §

2560.502) for failing to provide the information. *Meyer v. UnitedHealthCare*, 9:17-

cv-00098-DLC.

29.     The lawsuit was dismissed after United's attorney informed

Meyer's law firm that the lawsuit arose under state law and not ERISA.

30. In particular, the United attorney referenced a state claim under the Unfair Trade Practices Act, which is a Montana law. New Mexico does not have an Unfair Trade Practices Act.

31. After Meyer agreed to dismiss the 2017 lawsuit, United sent him some of the billing information he requested.

32. Meyer exhausted his administrative remedies by spending approximately 1.5 hours on a web conference call with the attorney for United reviewing spreadsheets that were given to him regarding the billing and discussing resolution of the issue.

33. The spreadsheets that were provided to Meyer indicate he owed Billings Clinic $2835.21 for "in-network" services in 2015.

34. Billings Clinic sent Meyer an "in-network" bill for more than $6,000 for services provided in 2015.

35. Meyer filed a second complaint against United in 2018 alleging claims processing violations under the Unfair Trade Practices Act. *Meyer v. United HealthCare Co.*, 9:18-cv-00173-DLC.

36. United then did a complete 180 and moved for judgment on the pleadings by arguing the case was preempted by ERISA.

37. The district court subsequently granted United's motion for judgment on the pleadings and held the state claims were pre-empted by ERISA.

38.     The Ninth Circuit affirmed in March, 2021.

39.     Before granting United's motion for judgment on the pleadings, the federal district court held a pretrial conference on April 11, 2019, at which time Meyer learned that Billings Clinic owns Missoula Community.

40.      Defendants Billings Clinic and/or Billings Clinic Regional Care owns Missoula Community.

41.     Defendant Billings Clinic allowed Meyer to be billed out-of-network rates for medical procedures that were necessary to address its medical malpractice and a hospital that it owns or has an ownership as a partnership.

42.     Defendants knew that Missoula Community was owned by Billings Clinic and/or Billings Clinic Regional Care and all services provided at the hospital should have been billed at in-network rates against Meyer's annual maximum in-network deductible.

43.     In September 2021, Meyer reached out to Crowley Fleck to discuss the ERISA claims alleged in this case against Billings Clinic.

44.     Meyer received a letter back from Mac Morris and Ian McIntosh with Crowley Fleck that stated any ERISA claim against the Billings Clinic would be "frivolous" and threatened to seek costs and fees under Rule 11 if Meyer filed this lawsuit.

45.     Mac Morris and Ian McIntosh of Crowley Fleck have a history of bringing vexatious litigation against Meyer on behalf of their clients.

46.     Morris and McIntosh filed a counterclaim against

Meyer after he filed a negligence action against Big Sky Resort and stated all the

proceeds from a settlement or jury verdict would be used to purchase

healthcare for the Resort's employees. *Meyer v. Big Sky Resort*, 2:18-0002-BMM

(D. Mont. 2020). Crowley Fleck sought to depose Meyer immediately before

his wedding and said if he didn't like it he could drop his lawsuit. Crowley

Fleck refused to provide Meyer with an extension to file a summary judgment

brief when his attorney was getting married and his wife was scheduled to give

birth to their twin sons.  Mac Morris and Ian McIntosh offered to settle the

counterclaim they filed on behalf of Big Sky Resort if Meyer paid Big Sky

Resort $50,000. Meyer was granted summary judgment on the counterclaim. *Big

Sky Resort*, 2:18-0002-BMM (Doc. 187 at 5-6) ("Meyer does not seek anything

out of bounds here.").

47.     The Rackeeter Influenced and Corrupt Organizations Act was

passed by Congress with the declared purpose of seeking to eradicate organized

crime in the United States.

48.     Under RICO, it is "unlawful for any person employed by or

associated with any enterprise engaged in, or the activities of which affect,

interstate or foreign commerce, to conduct or participate, directly or indirectly,

in the conduct of such enterprise's affairs through a pattern of racketeering

activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

49.     "To state a claim under § 1962(c), a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. " *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (en banc).

50.     "[T]o conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs, § 1962(c), one must participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993).

51.     "RICO liability is not limited to those with primary responsibility for the enterprise's affairs." *Reves,* 507 U.S. at 179.

52.     RICO does not "require[e] significant control over or within an enterprise." *Reves*, 507 U.S. at 179 n.4.

53.     Instead, a plaintiff need only show the defendant has "some part in directing the enterprise's affairs[.]" *Reves,* 507 U.S. at 179.

54.     "Racketeering activity" consists of no more than the commission of a predicate act. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495 (1985).

55.     "RICO is to be read broadly ... [and] liberally construed to effectuate its remedial purposes." *Sedima*, 473 U.S. at 487-98; *Reves*, 507 U.S. at 183.

56.     Defendants Billings Clinic and Billings Clinic Regional Care had some part in directing or managing whether the medical services provided and bills sent to Meyer were billed as in-network or out.

57.     Defendants Billings Clinic and Billings Clinic Regional Care had some part in directing or managing whether services that were provided at in-network facilities were billed as in-network or out-of-network by directing service providers to send Meyer and Defendant United bills as either in or out-of-network.

58.     Defendant United had some part in directing or managing whether services that were provided at in-network facilities were paid as in-network or out-of-network by deciding whether bills from service providers should be paid at in-network or out-of-network rates.

59.     "Enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

60.     To show the existence of such an enterprise "plaintiffs must plead that the enterprise has (A) a common purpose, (B) a structure or organization, and (C) longevity necessary to accomplish the purpose." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir 2014) (citation omitted).

61.     Defendants created an enterprise in which Meyer received medical care at in-network facilities and was then surprise-billed for emergency services at out-of-network rates.

62.     One purpose of the enterprise was to make profit and externalize

costs onto the insured. When Defendants purchased Missoula Community, it was forced to convert into a for profit.

63.     Defendants knew that Meyer and other patients would be surprised to receive out-of-network bills for medical services provided at a facility that was owned by an in-network facility or otherwise considered an in-network facility.

64.     Defendants intentionally structured the organization in such a way that Meyer would not know, or did not have a choice, as to whether the medical services that he received at in-network facilities would be considered in-network or out until after the services had been rendered.

65.     Racketeering activity includes the predicate acts of mail fraud and wire fraud. *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010) (citation omitted).

66.     The only aspects of wire or mail fraud that require particularized allegations are the factual circumstances of the fraud itself. *Sanford*, 625 F.3d at 558.

67.     Defendants took part in mail and wire fraud by either sending, directing to be sent, or allowing Meyer to be sent surprise medical bills.

68.     Defendants deceived Meyer into thinking Missoula Community and the medical providers that provided services at the facility were out-of-network.

69.    Defendants actively concealed the fact that Missoula Community is owned by Billings Clinic and/or Billings Clinic Regional Care by allowing Meyer to be billed for medical services provided at Missoula Community as out of network.

70.    Defendants did not tell Meyer why medical services provided at the in-network hospitals would be billed at out-of-network rates.

71.    Defendant Billings Clinic knew, but did not tell Meyer, that he would be billed for medical services performed to address the medical malpractice that occurred at its in-network facility at out-of-network rates.

72.    Defendant United allowed Defendant Billings Clinic to bill Meyer at out-of-network rates for emergency services that were completed at an in-network facility to address Billings Clinic's medical malpractice.

73.    Defendants acted as an enterprise by engaging in a course of conduct that surprise billed Meyer with out of network rates for medical services that should have been billed at in-network rates.

74.    Billings Clinic and/or Billings Clinic Regional Care, as owner of Missoula Community, billed Meyer for medical services he did not owe.

75.    United knowingly allowed Billings Clinic and/or Billings Clinic Regional Care to bill Meyer for medical bills he did not owe.

76.    Billings Clinic and Billings Clinic Regional Care have a long-standing business relationship with United.

77. Billings Clinic, Billings Clinic Regional Care, and United conspired to have unsuspecting patients such as Meyer sent surprise medical bills instead of having medical services provided at an in-network facility billed at in-network rates.

78. A "pattern of racketeering activity" "requires at least two acts of racketeering activity" that occur within ten years of one another. 18 U.S.C. § 1961(5).

79. Defendants engaged in mail and wire fraud under 18 U.S.C. § 1961; 18 U.S.C. § 1341; and 18 U.S.C. §1343 by sending, or allowing Meyer to be sent bills and calling him, or allowing him to be called to collect on medical bills that he did not owe.

80. The following is a small sampling of the fraudulent collections letters that were sent to Meyer for services that should have been covered as in-network:

- $710.00 Hahnstadt (April 8, 2016) (for 2015 & 2016 Services)

- $1,355.00 Missoula Community (April 18, 2016)

- $228.04 Missoula Bone & Joint (May 3, 2016)

- $840.00 Hahnstadt (May 6, 2016) (for 2015 & 2016 Services)

- $1,355.00 Missoula Community (May 16, 2016)

- $59.85 Missoula Community (May 26, 2016) (Final Notice)

- $3,068.00 Missoula Community (May 26, 2016) (Final Notice)

- $1,387.00 Missoula Community (June 3, 2016) (2015 Services)

- $268.68 CPG Physician Billing (June 6, 2016)

- $970.00 Hahnstadt (June 8, 2016) (2015 & 2016 Services)

- $60.08 Missoula Community (July 18, 2016) Collections Letter

- $3,083.96 Missoula Community (July 18, 2016) Collections Letter

- $1,277.06 Missoula Community (July 25, 2016) Collections Letter

- $89.33 Collections Letter (August 18, 2016)

- $970.00 Hahnstadt (Final Notice) (September 12, 2016)

- $149.00 Collections Letter (September 16, 2016)

- $232.88 Collections Letter (September 19, 2016)

- $1,390.42 Missoula Community (October 6, 2016) Collections Letter

- $234.64 Collections Letter (October 19, 2016)

- $890.51 Collections Letter (October 24, 2016)

- $149.00 Collections Letter (December 20, 2016)

- $7,532.78 Missoula Community (October 5, 2017) Collections Letter

81.    These fraudulent bills were continuous and related.

82.    Meyer paid some of the fraudulent bills that should not have been sent to him.

83.    Bills that were not paid were sent to collections.

84.    Meyer suffered financial injury by either paying the fraudulent bills or having them sent to collections when he could not afford to pay them.

85. United facilitated the mail and wire fraud by allowing providers that performed services at facilities owned by Defendants to repeatedly seek to collect on medical bills that he did not owe.

86. Billings Clinic and Billings Clinic Regional Care extorted and conspired to extort money from Meyer that he did not owe by sending medical bills and calling to collect on bills that were provided at facilities its owns, but on bills that were not owed.

87. United facilitated the extortion and conspiracy to extort by allowing Billings Clinic and/or Billings Clinic Regional Care to repeatedly seek to collect on medical bills that Meyer did not owe.

88. This series of conspiracies constitute a "pattern of racketeering activity" within meaning of RICO.

89. Defendants engaged in conduct of an enterprise through a pattern of racketeering activity which caused injury to Meyer.

90. Meyer suffered financial injury, namely medical debt that was sent to collections, as a result of Defendants' unlawful actions.

## PARTIES, VENUE, AND JURISDICTION

91. John Meyer is a resident of Bozeman, Montana.

92. Defendant UnitedHealthcare Insurance Company is a corporation headquartered in Hartfort, CT. United is engaged in the business of insurance within the State of Montana.

15

93.     Defendant Billings Clinic is Montana's largest health care system serving Montana, Wyoming, and the western Dakotas.

94.     Defendant Billings Clinic Regional Care is a partnership between Billings Clinic and Regional Care Hospital Partners.

95.     Plaintiff John Meyer is a proper party with standing to bring this action under the Employee Income Retirement Security Act and the Racketeer Influenced Corrupt Organizations Act.

96.     Jurisdiction and Venue are proper in this Court per 28 U.S.C. § 1331 and 29 U.SC. § 1132(e). The insurance policy at issue was provided to Plaintiff through his past employer, Wild Earth Guardians, and is thus governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq. This Court has subject matter jurisdiction over the RICO claim pursuant to 18 U.S.C. § 1964(c).

97.     Any exhaustion requirement was satisfied by Meyer's conversation with United's attorney to resolve the billing issues, is waived by the Defendants' fraudulent activities, would be futile because of the equitable requested relief, and because United failed to comply with statutory requirements under 29 U.S.C. § 1132.

## CLAIMS FOR RELIEF

### COUNT ONE – Civil Penalties for Defendant's Violation of 29 U.S.C. § 1132(c)(1)(B)

98. Plaintiff incorporates all proceeding paragraphs by reference.

99. On February 1, 2017, Meyer requested documents from United in his file that were necessary to understand which of his claims had been paid and which had not.

100. United did not respond to the request until August 28, 2017.

101. United's delay in sending the requested information violated 29 U.S.C. § 1132(c)(1)(B).

102. Meyer requests a civil fine against United of $110 a day be awarded to him pursuant to 29 C.F.R. § 2560.502(c)(1).

**COUNT TWO – Equitable Relief Under 29 U.S.C. § 1132(a)(1)-(3) or Federal Common Law**

103. Plaintiff incorporates all proceeding paragraphs by reference.

104. Defendant United violated ERISA by:

A. Failing to maintain correct records regarding the amount of "in-network" claims that had been submitted for payment in 2015 and 2016.

B. Failing to pay service providers for all "in-network" services that were provided with the exception of the $6,000 owed per the policy.

C. Facilitating surprise billing by allowing services that were performed at Missoula Community to be billed as out-of-network.

105. Defendant United caused Meyer financial harm by representing that Defendant Billings Clinic was an in-network provider while allowing medical services that were provided at and by a facility owned by Billings Clinic and/or Billings Clinic Regional Care, to be billed as out-of-network.

106.     Meyer requests equitable remedies including, but not limited to, being made whole for benefits he should have received, fees and interest on any debts sent to collection that should have been paid and any other surcharge that is appropriate under the equities of this case.

## COUNT THREE – Equitable Relief Under 29 U.S.C. §1132(a)(3) or Federal Common Law

107.     Plaintiff incorporates all proceeding paragraphs by reference.

108.     Meyer began receiving insurance coverage through United in October, 2015.

109.     Meyer was billed his maximum $6,000 in-network deductible in 2015, and United then reset Meyer's annual deductible on January 1st, 2016.

110.     Defendant United was unjustly enriched by resetting Meyer's annual policy deductible three months after he began receiving coverage.

111.     Defendant United violated 29 U.S.C. § 1132(a)(3) by resetting Meyer's annual in-network and out-of-network deductibles on January 1, 2016, instead of twelve months after Meyer secured insurance through United or reducing the deductible amount relative to time left in the annual calendar year.

## COUNT FOUR – Equitable Relief Under 29 U.S.C. § 1132(a)(3) or Federal Common Law

112.     Plaintiff incorporates all proceeding paragraphs by reference.

113.     Defendant Billings Clinic violated 29 U.S.C. § 1132(a)(3) by knowingly participating in Defendant United's breach of fiduciary duty.

114. While Meyer was in a coma, Meyer's father spoke to representatives for Billings Clinic and United about his health insurance.

115. The Billings Clinic knew that Meyer had health insurance through United before medical service providers began to bill him for medical services he was provided while at Billings Clinic and Missoula Community.

116. The Billings Clinic and Missoula Community, communicated with United about the medical services that were provided to Meyer as the result of his ski wreck before he began to receive medical bills for the services.

117. The Billings Clinic knew that it was considered in-network for purposes of Meyer's health plan.

118. The Billings Clinic knew or should have known that emergency medical services that were provided to Meyer to address its medical malpractice at facilities it owns in partnership with Billings Clinic Regional Care, including Missoula Community, should have been billed as in-network.

119. The Billings Clinic knowingly participated in United's ERISA violations.

120. The Billings Clinic suggested that Meyer be taken to Missoula Community and then knowingly allowed its service providers to bill Meyer for services they provided to address the malpractice as "out-of-network."

121. The Billings Clinic knowingly allowed United to violate ERISA by

coding the emergency medical services that Meyer was provided for the malpractice regarding his arm as "out-of-network."

122.    Medical services provided at Missoula Community should have been billed as in-network because Billings Clinic in partnership with Billings Clinic Regional Care owns Missoula Community.

123.    Defendant Billings Clinic and Billings Clinic Regional Care violated 29 U.S.C. § 1132(a)(3) because it had actual or constructive knowledge of this ownership.

124.    Defendants Billings Clinic and Billings Clinic Regional Care violated 29 U.S.C. §1132(a)(3) by facilitating the practice of "surprise billing."

125.    Meyer has suffered cognizable losses because of the surprise billing, such as unnecessary bills, harassment from creditors, and a poor credit score.

## COUNT FIVE – Violations of Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. §§ 1961-1968

126.    Plaintiff incorporates all proceeding paragraphs by reference.

127.    Defendants violated the Racketeer Influenced and Corrupt Organizations Act by engaging in conduct of an enterprise through a pattern of racketeering activity that caused injury to Meyer.

### REQUEST FOR RELIEF

Plaintiff respectfully prays for the following relief:

A. Declare that Defendants violated ERISA & RICO;

B. Order Defendants to reimburse Meyer for benefits he should have received, fees and interest on any debts sent to collection that should have been paid, and any other surcharge that is appropriate under the equities of this case.

C. Reform and rewrite the health insurance contract that Meyer had with United so that:

    1.) All medical services provided at a facility owned or otherwise managed by Defendants are billed "in-network."

    2.) The annual deductible is reset every twelve months, or reduce the annual deductible proportionately to the amount of time left in the calendar year.

D. Enjoin Defendants from further surprise billing.

E. Grant costs, attorney fees, and treble damages pursuant to 29 U.S.C. § 1132(g)(1) and 18 U.S.C § 1964(c);

F. Grant any other requested or appropriate relief.

DATED this 6th day of June, 2022.

/s/John Meyer
JOHN MEYER
P.O. Box 412
Bozeman, MT 59771
(406) 546-0149
John@cottonwoodlaw.org