IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| JOHN MEYER, | CV 21–148–M–DLC |
| Plaintiff, | |
| vs. | ORDER |
| UNITEDHEALTHCARE INSURANCE COMPANY; BILLINGS CLINIC; and REGIONAL CARE HOSPITAL PARTNERS HOLDINGS, INC., d/b/a RCCH HEALTHCARE, | |
| Defendants. | |

Before the Court is Defendant Regional Care Hospital Partner's[1] ("RCHP") Motion to Dismiss Plaintiff John Meyer's Second Amended Complaint (Doc. 121) pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 130.) Defendants UnitedHealthcare Insurance Company ("United") and Billings Clinic join RCHP's Motion to Dismiss. (Docs. 133; 134.) For the reasons herein, the Motion will be granted and the claims dismissed.

---

[1] Defendants represent that RCCH Healthcare has not been a registered entity in Montana for several years. The appropriate entity is RCHP Billings-Missoula, LLC. The latter operates Community Medical Center in Missoula and will be referred to as such throughout this Order.

1

**FACTUAL BACKGROUND**[2]

In December 2015, Meyer was involved in a serious ski accident at Big Sky Resort. After the accident, Meyer spent approximately two weeks at Billings Clinic in 2015 and another two weeks undergoing mental and physical rehabilitation at Missoula Community Medical Center ("Community") from 2015 to early 2016. Billings Clinic and RCHP are co-owners of Community. At the time of his accident, Meyer was insured by United through his employer, Wildearth Guardians. Meyer's policy provided an in-network deductible of $6,000. Meyer alleges that he was unlawfully billed at out-of-network rates for the care received at Community, despite the fact that Community was owned by Billings Clinic in partnership with RCHP.

Meyer brings this case to challenge both "Defendants' pattern and practice of 'Surprise Billing,' a commonly referred to phenomenon where a patient receives 'out-of-network' bills for medical services that were provided at an 'in-network' medical facility" and "the practice of making an insured pay more than their 'annual' policy deductible by resetting the deductible on January 1, regardless of when the person became insured."

---

[2] The following facts are taken from Meyer's Second Amended Complaint (Doc. 121) and are assumed true for purposes of resolving the Motion to Dismiss.

**PROCEDURAL BACKGROUND**

Meyer first filed this action on December 10, 2021. (Doc. 1.) Meyer filed a

first amended complaint ("FAC") on June 6, 2022, (Doc. 21) following Defendants

United and Billings Clinic's first motion to dismiss (Docs. 12, 16.) On June 21,

2022, United and Billings Clinic again moved to dismiss. (Docs. 22; 24.) The

Court granted the motion in part, dismissing Counts I, III, and V, which alleged

ERISA and RICO violations, and allowing Counts II and IV, alleging ERISA

violations under 29 U.S.C. § 1132(a)(1)–(3), to survive. (Doc. 35.)

Meyer then moved for leave to file a second amended complaint in an

apparent attempt to reallege his RICO claim. (Doc. 41.) The Court denied that

motion after finding the RICO claim unduly prejudicial and futile. (Doc. 49 at 4–

8.) The Court also ordered that Meyer strike paragraphs 43, 44, 45, and 46 of the

then-operative Amended Complaint to remove "inappropriate assertions against

opposing counsel [that] have no place in proceedings before this Court." (*Id.* at 9.)

Meyer thereafter filed a Notice of Appeal concerning this Court's order

denying his motion for leave to file a second amended complaint. (Doc. 55.) The

Court *sua sponte* declared that its order denying leave to amend was not appealable

and Meyer's Notice of Appeal did not deprive the Court of jurisdiction to proceed

with the case. (Doc. 58 at 9.) Meyer then filed a Federal Rule of Civil Procedure

54(b) motion for final judgment, requesting that the Court certify "for immediate

appeal the Court's orders dismissing the [RICO] claim and denying the motion to amend." (Doc. 59 at 2.) The Court denied Meyer's motion. (Doc. 73.)

This matter was reassigned from presiding Judge Sam E. Haddon to the undersigned on August 18, 2023. (Doc. 106.) On August 9, 2023, Meyer filed a second motion for leave to file a second amended complaint. (Doc. 100.) Through the motion, Meyer sought to (1) add a RICO class-action claim; (2) add RCHP as a defendant; and (3) convert the existing ERISA claims to class-action claims. (*Id.* at 1–2.) This Court denied Meyer's motion insofar as he sought to allege a RICO class-action claim, but granted Meyer leave to amend his complaint to add RCHP as a defendant and to convert his ERISA claims to a class action. (Doc. 116 at 3–8.)

On October 20, 2023, Meyer filed his Second Amended Complaint ("SAC")—now the operative pleading—alleging that United violated ERISA, 29 U.S.C. § 1132(a)(1)–(3) (Count I) and Billings Clinic and RCHP violated ERISA, 29 U.S.C. § 1132(a)(3) (Count II). (Doc. 121.) Meyer also brings this as a class action pursuant to Federal Rule of Civil Procedure 23, (*id.* ¶¶ 6–11), though class certification has not yet been sought. On March 5, 2024, RCHP filed the present Motion. (Doc. 130.)

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a

complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). At the motion to dismiss stage, the court "take[s] all well-pleaded factual allegations in the complaint as true, construing them in the light most favorable to the nonmoving party." *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018) (citation omitted).

To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint will survive a motion to dismiss if it alleges facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. But if the complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory," then dismissal under Rule 12(b)(6) is appropriate. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

## DISCUSSION

### I.    Dismissal of Meyer's ERISA Claims

Congress enacted ERISA to protect the interests of participants in employee benefit plans and their beneficiaries by promulgating substantive regulatory requirements and an integrated system of procedures for enforcement. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). ERISA's enforcement scheme includes a cause of action against plan fiduciaries for beach of their fiduciary

5

duties, section 1132(a)(2), and a cause of action to remedy plan or ERISA violations with "appropriate equitable relief," section 1132(a)(3). ERISA's civil enforcement section provides that a civil action may be brought by the Secretary, a plan participant, beneficiary, or fiduciary for relief under 29 U.S.C. § 1109. *Id.* § 1132(a)(2).

Defendants seek to dismiss the SAC, arguing that (1) ERISA does not provide for a breach of fiduciary claim against nonfiduciaries in the context alleged; (2) Meyer fails to allege a plausible breach of any fiduciary duty by United; (3) Meyer's claims are time-barred by the applicable three-year statute of limitations; and (4) even if Meyer's individual ERISA claims survive, he cannot serve as both class representative and class counsel. (Doc. 131 at 2.)

### A. Count I – ERISA Violations against United

Count I alleges United violated sections 1132(a)(1)–(3) by: (1) failing to maintain correct records regarding the amount of "in-network claims" submitted for payment in 2015 and 2016; (2) failing to pay service providers for all "in-network" services provided with the exception of in-network policy deductibles; (3) facilitating surprise billing by allowing services that were performed at in-network facilities to be billed as out-of-network; and (4) resetting Meyer's annual deductible on January 1, 2016, instead of twelve months after he obtained

insurance coverage.[3] (Doc. 121 ¶ 152.) Meyer argues the services he received at Community should have been billed as in-network because they were sought to correct Billings Clinic's alleged medical malpractice and because Billings Clinic owned Community. (Doc. 121 ¶¶ 107, 109.)

An entity is a fiduciary under ERISA to the extent it has or exercises any discretionary authority, control, or responsibility in the management or administration of an ERISA plan. 29 U.S.C. § 1002(21)(A)(i), (iii). In discharging its duties, a fiduciary must use "the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character with like aims." *Id.* § 1104(a)(1)(B). To state a claim for breach of fiduciary duty, a plaintiff must allege the following: (1) the defendant was a fiduciary; (2) the defendant breached a fiduciary duty; and (3) the plaintiff suffered damages. *Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020, 1026 (9th Cir. 2021).

Defendants contend that Meyer failed to plead a plausible claim for breach of fiduciary duty. (Doc. 131 at 8.)[4] In response, Meyer argues the SAC alleges

---

[3] In its Order dated January 20, 2023, the Court found that Meyer's health insurance plan contained no exceptions for persons like Meyer who became covered during the calendar year and dismissed this claim. (Doc. 35 at 9.)

[4] In its Order dated January 20, 2023, the Court found that a similar iteration of this claim survived a motion to dismiss Meyer's first amended complaint because

actions constituting a breach of fiduciary duty, including:

- Defendant United played some unspecified part in deciding whether services that were provided at in-network facilities were paid as in-network or out-of network by deciding whether service providers should bill at in-network or out-of-network rates.

- Defendants structured their enterprise in such a way that Plaintiff would not know, or did not have a choice, as to whether the medical services he received at in-network facilities would be considered in-network or out until after the services had been rendered.

- Defendant United violated ERISA by facilitating surprise billing by allowing services that were performed at in-network facilities to be billed as out-of-network.

(Doc. 139 at 9) (citing Doc. 121 ¶¶ 99, 104, 152(c).)

Meyer fails to provide—nor is the Court aware of—any authority supporting his claim that these allegations constitute a breach of fiduciary duty. Meyer argues his ERISA claims arise under the "No Suprises Act," a federal bill restricting out-of-network providers from charging more than in-network rates at an in-network facility in specific circumstances. (Doc. 139 at 5); *see* 42 U.S.C. §§ 300gg-111, 131, 132. The issue with Meyer's argument, however, is that the No Suprises Act did not go into effect until January 1, 2022. 42 U.S.C. §§ 300gg-131, 300gg-1322; https://www.federalregister.gov/d/2021-14379/p-5 (last accessed April 4, 2025).

---

Meyer pled plausible claims "that support a fiduciary relationship existed between Meyer and Defendants." (Doc. 35 at 9.) The Court makes no finding on that issue here, but rather rules that Meyer's SAC fails to plead a plausible claim for breach of that fiduciary duty.

8

And unless Congress "has unambiguously instructed retroactivity," courts are to "read laws as prospective." *Vartelas v. Holder*, 566 U.S. 257, 266 (2012). Meyer makes no argument that the No Surprises Act is retroactive under ERISA, nor has Congress unambiguously instructed as much. *See* § 300gg-111. It is not apparent from the facts pled that United failed to use the prevailing standard of care, skill, and diligence as existed in 2015 and 2016, nor is it apparent exactly what duty United breached. Moreover, the SAC fails to allege facts supporting Meyer's claim that United failed to maintain correct billing records; indeed, Meyer does not address this allegation in his response briefing.

Accordingly, Count I must be dismissed for failure to plead a cognizable claim for relief under ERISA.

## B. Count II – ERISA Violations against Billings Clinic and RCHP

Count II alleges Billings Clinic and RCHP violated ERISA, section 1132(a)(3), by knowingly participating in United's breach of fiduciary duty. (Doc. 121 ¶¶ 155–56.)

Defendants argue Meyer's ERISA claims are foreclosed by the Ninth Circuit's decision in *Mertens v. Hewitt Associates*, wherein the court confirmed that a nonfiduciary cannot be held liable under ERISA for knowingly participating in another's breach of fiduciary duty. 948 F.2d 607, 611–12 (9th Cir. 1991) (*affirmed* by *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993)). In response,

Meyer argues that a nonfiduciary third party may still be liable under section 1132(a)(3) for participation in a "prohibited transaction" as set forth by 29 U.S.C. § 1106. (Doc. 139 at 4) (citing *Caring for Montanans, Inc.*, 915 F.3d at 659). Pursuant to section 1106, "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction" with "a party in interest" for the "furnishing of . . . services" if "more reasonable compensation is paid therefor." 29 U.S.C. §§ 1106(a)(1)(C), 1108(b)(2). Because section 1132(a)(3) "makes no mention at all of which parties may be proper defendants, a party in interest—including a non-fiduciary third party—may be sued under this provision for participation in a prohibited transaction." *Caring for Montanans, Inc.*, 915 F.3d at 659 (internal quotation mark and citation omitted).

In response to the Motion to Dismiss, Meyer asserts that his section 1132(a)(3) claim pertains to United's alleged "pattern and practice of 'surprise billing,'" a "fraudulent transaction" whereby patients receive out-of-network bills for medical services provided at an in-network medical facility. (Doc. 139 at 5, 12.) This transaction, Meyer argues, is prohibited within the meaning of section 1106 because it violates the No Surprises Act. (*Id*.)

Although Meyer is indeed correct in that a nonfiduciary may be sued for participation in a prohibited transaction under *Caring for Montanans, Inc.*, that fact does not help him here. First, and most importantly, the SAC mentions neither a

"prohibited transaction" nor section 1106. Yet even if the Court were to accept Meyer's attempt to assert this new, unpled allegation—which it does not—Meyer's claims against Billings Clinic and RCHP would still fail. As explained in Section I-A above, the No Suprises Act did not go into effect until January 1, 2022. Therefore, the "prohibited transaction" Meyer alleges was, in fact, not prohibited at the time he received out-of-network bills from 2016 to 2018. Moreover, because Meyer failed to state a claim that United breached any fiduciary duty, *see* Section I-A, RCHP and Billings Clinic cannot have participated in said breach.

Meyer also argues that he can bring a section 1132 claim because he seeks equitable relief. (Doc. 139 at 7.) However, because Meyer fails to allege a cause of action under ERISA, the Court need not reach the issue of remedy. *See* 29 U.S.C. § 1132(a)(3) (plan participate may obtain appropriate equitable relief to address violations under the statute or to enforce terms of the plan). Therefore, because Meyer fails to state a claim that RCHP or Billings Clinic participated in a "prohibited transaction" pursuant to sections 1106 and 1108, his section 1132(a)(3) claim must be dismissed.

### C. Statute of Limitations

Under ERISA section 1113, no action for fiduciary breach may be brought after the earlier of (1) six years from the date of the last action constituting part of the breach (on or which the fiduciary could have cured the breach or violation,) or

(2) three years from the earliest date on which plaintiff had actual knowledge of the breach or violation. 29 U.S.C. § 1113. Situations involving "fraud or concealment" are exempt from these provisions, and in such cases, an action may be filed up to six years after the breach or violation was discovered. *Id.*

The Ninth Circuit follows a two-step approach to determine whether a claim is barred by section 1113(2)'s "actual knowledge" requirement. *Sulyma v. Intel Corp. Invest. Pol'y Comm.*, 909 F.3d 1069, 1072–73 (9th Cir. 2018). First, a court "isolate[s] and define[s] the underlying violation upon which plaintiff's claim is founded." *Id.* at 1073. Second, a court "inquire[s] when [the plaintiff] had 'actual knowledge' of the alleged breach or violation." *Id.* "This inquiry into plaintiff['s] actual knowledge is entirely factual, requiring examination of the record. Identifying the breach may end the analysis in cases where the breach coincides with an ERISA plaintiff's actual knowledge of the breach." *Id.*

Whether knowledge of an underlying transaction alone is "necessarily sufficient" to trigger ERISA's three-year limitations period is case-dependent. *See id.* at 1075. What is clear, however, is "the defendant must show that the plaintiff was actually aware of the nature of the alleged breach more than three years before the plaintiff's action is filed." *Id.* "[K]nowledge of illegality is not required to trigger section 1113's three-year statute of limitations period. Instead, knowledge of the allegedly illegal action or transaction can be sufficient." *Id.* at 1074–75. For

example, in a section 1106 case, a plaintiff "need only be aware that the defendant has engaged in a prohibited transaction, because knowledge of the transaction is all that is necessary to know that a prohibited transaction occurred." *Id.* at 1075 (citation omitted).

Meyer argues his complaint was filed within ERISA's six-year statute of limitations for cases involving fraud or concealment. (Doc. 139 at 9.) The Court disagrees. The SAC alleges that Defendants "actively concealed the fact that Missoula Community is owned by Billings Clinic in a joint venture by allowing Plaintiff to be billed for medical services provided at Missoula Community as out-of-network" and that Billings Clinic "knowingly participated in fraud by not telling Plaintiff that it owns Missoula Community as a joint venture." (Doc. 121 ¶¶ 57, 107.) However, the Court need not accept as true allegations that are conclusory and unsupported by the facts pled. *See Caring for Montanans*, 915 at 652–53.

Indeed, after excluding all conclusory allegations, neither the SAC nor Meyer's response in opposition to the Motion to Dismiss sets forth specific facts to establish that Defendants committed fraud or took steps to conceal a breach of fiduciary duty. *Barker v. American Mobil Power Corp.*, 64 F.3d 1397, 1401 (9th Cir. 1995) (citing *Radiology Ctr., S.C. v. Stifel, Nicolaus & Co.*, 919 F.2d 1216, 1220 (7th Cir. 1990) (The "fraud or concealment" exception applies only when an ERISA fiduciary either "misrepresent[s] the significance of facts the beneficiary is

13

aware of (fraud) or . . . hid[es] facts so that the beneficiary never becomes aware of them (concealment.")). Moreover, Meyer's claim is undercut by his admission that in 2014 and 2015, Billings Clinic's website contained a press release stating that Community had sold "to a joint venture between Billings Clinic and RegionalCare Hospital Partners." (Doc. 121 ¶¶ 74, 76.) Therefore, the three-year statute of limitations applies.

Meyer's allegations—insofar as they relate to Defendants and their alleged billing practices—are premised on the care he received at Community, which terminated in January 2015 and for which Meyer was first billed in early 2016. (Doc. 121 ¶ 22.) Defendants contend that because the medical bills exceeded Meyer's in-network deductible, Meyer had actual knowledge that he was being billed at out-of-network rates as of early 2016. (Doc. 131 at 10–11.) Had the bills been in-network, Defendants continue, they would have been covered because Meyer had reached his deductible. (*Id*. at 11.) Meyer responds that "whether [he] knew he was being bill[ed] at out-of-network rates does not mean that he had actual knowledge he should have been billed at in-network rates." (Doc. 10 at 13.) Meyer does not deny knowing that the bills were out-of-network. This concession, Defendants reply, demonstrates Meyer knew he was being billed at out-of-network rates. (Doc. 141 at 6.)

The Court agrees with Defendants that Meyer's concession demonstrates he

had actual knowledge of the underlying transaction in 2016. And because these out-of-network transactions form the basis of Meyer's complaint, the Court finds, in this instance, that knowledge of these transactions was sufficient to alert Meyer to the nature of his particular claim such that he had actual knowledge of the breach. *See Sulyma*, 909 F.3d at 1075 ("In light of the statutory text and our case law, we conclude that the defendant must show that the plaintiff was actually aware of the nature of the alleged breach more than three years before the plaintiff's action is filed."). Meyer argues he only learned Billings Clinic and RCHP owned Community—and thus should have billed him for in-network rates—in 2019, but "[t]he statute of limitations is triggered by defendants' knowledge of the transaction that constituted the alleged violation, not by their knowledge of the law." *Blanton v. Anzalone*, 760 F.2d 989, 992 (9th Cir. 1985).

At any rate, to the extent Meyer seeks to allege claims under section 1106, "the plaintiff need only be aware that the defendant has engaged in a prohibited transaction, because knowledge of the transaction is all that is necessary to know that a prohibited transaction has occurred." *Sulyma*, 909 F.3d at 1075. Because identifying the breach in this instance coincides with Meyer's actual knowledge of the breach, the analysis may end here. *Id.* at 1073. Accordingly, this matter is also time-barred by ERISA's three-year statute of limitations.

## II.    Class Allegations

Although a Rule 12(b)(6) motion is typically not the proper vehicle to address class allegations and sufficiency under Federal Rule of Civil Procedure 23, *Haralson v. United Airlines, Inc.*, 224 F. Supp. 3d 928, 943 (N.D. Cal. 2016), it may be appropriate to dismiss class claims at the pleading stage where there is no factual support for the class allegations, *Zamora v. Penske Truck Leasing Co., L.P.*, 2021 WL 809403, at *3 (C.D. Cal. March 3, 2021). Meyer's class claims are premised on the same allegations as those described in Counts I and II above: (1) United's practice of surprise billing, and (2) United's policy of resetting deductibles on January 1 instead of every 12 months. (Doc. 121 ¶¶ 6, 8.) And for the reasons described, these allegations fail to state a plausible claim for relief under ERISA. Accordingly, Meyer's class claims must be dismissed.

## III.    Dismissal with Prejudice

Where a complaint fails to state a plausible claim, "[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc). And although a district court should freely grant leave to amend when justice so requires, "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint[.]" *Ecological Rights Found. v.*

*Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013). Because Meyer has twice

amended his complaint, the Court finds that further amendment would be futile.

CONCLUSION

Accordingly, for the reasons stated above,

IT IS ORDERED that the Motion to Dismiss (Doc. 130) is GRANTED and

this matter is DISMISSED WITH PREJUDICE.

The Clerk of Court is directed to close this case.

DATED this 8th day of April, 2025.

Dana L. Christensen, District Judge
United States District Court